## BURNTISLAND SHIPBUILDING CO., Limited, v. BARDE STEEL PRODUCTS CORPORATION.

(District Court, D. Delaware. February 15, 1922.)

No. 5.

1. **Evidence ⊚⟲29—Statutes ⊚⟲279—Law of state judicially noticed, and need not be pleaded in federal court.**

Federal courts take judicial notice of the public laws of every state, and the law of a state need not be pleaded.

2. **Sales ⊚⟲267—Implied warranty may be excluded by express language of contract.**

The provisions of New York Sale of Goods Act, respecting implied warranties in the sale of goods, do not preclude the seller by express agreement from excluding, or limiting the effect of, any warranty which would otherwise be implied under the act.

3. **Sales ⊚⟲267—Seller held not liable on implied warranty.**

Where a contract for the sale of steel, purchased by the seller and to be delivered to it by another, as was understood by the parties, expressly provided that "the quantity, quality, and description of steel is not warranted or guaranteed," the seller cannot be held liable on an implied warranty of quantity, quality, or description.

At Law. Action by the Burntisland Shipbuilding Company, Limited, for the use of Raeburn & Verel, Limited, against the Barde Steel Products Corporation. On demurrer to second count of declaration. Demurrer sustained.

Caleb S. Layton, of Wilmington, Del., for plaintiff.

James I. Boyce and Robert H. Richards, both of Wilmington, Del., for defendant.

MORRIS, District Judge. To the second count of a declaration filed in an action at law brought by Burntisland Shipbuilding Company, Limited, for the use of Raeburn & Verel, Limited, against Barde Steel Products Corporation, the defendant has demurred. In this count a contract between the parties, made in the state of New York, is set out in hæc verba, pertinent portions of which are as follows:

"The quantity, quality, and description of steel is not warranted or guaranteed, and it is understood that the same constitutes a part of the steel sold to us by the United States Shipping Board Emergency Fleet Corporation or Navy known as excess steel ordered for the war shipping program of the United States. The quantity, quality, and description as given below are taken directly from the certifications furnished us by the United States Shipping Board Emergency Fleet Corporation, and we make no representations with reference to same except to deliver if, as and when the steel is delivered to us, and that the quantity, quality and description shall be such as we are able to furnish under circumstances and conditions shown on the reversed side hereof.

"Quantity; Quality; Description.—As per specifications attached (always over—never under). * * *

"Terms: Bank guaranty on signing. Cash against railroad bills of lading and Lloyd's certificate. * * *

"1. The seller has bought from the Shipping Board all of the steel contracted for by the Shipping Board under its war ship building program, which is in excess of the amount required to complete such shipbuilding program. The amount, quantity, quality, description, and specifications of the steel so

⊚⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

purchased by the seller is ascertainable only as and when certified to the seller by the Shipping Board. The seller therefore assumes no obligation to the purchaser except to deliver to the purchaser steel of the quantity, quality, and general description ordered, if, as, and when the said steel shall be delivered to the seller by the Shipping Board. * * *

"5. The seller is not the manufacturer of the steel included under this order, and assumes no obligation to the purchaser for any defects or other faults that may be or become apparent in the said steel, it being understood that the steel has been purchased by the seller 'as is' and is to be delivered to the purchaser 'as is.' "

The specifications attached to the contract call for plates the length, breadth, and thickness of which are fixed to the fraction of an inch. The second count further alleges that by virtue of the laws of the state of New York the defendant thereby warranted the plates to be of the kind, character, and description set forth; that the warranty was relied upon by the defendant; that the plates shipped were of a kind and description totally unlike those specified in the contract; and that plaintiff within a reasonable time notified defendant thereof.

The causes of demurrer assigned are: (1) That the quality and description of the steel was not warranted; (2) that it is not alleged in what particular the plates shipped were unlike those alleged to be called for by the contract; (3) that it is not alleged that the plates shipped were "under" in any respect; and (4) that the law of the state of New York is insufficiently pleaded.

[1] The last will be first considered. In Hanley v. Donoghue, 116 U. S. 1, 6, 6 Sup. Ct. 242, 245 (29 L. Ed. 535), it was said:

"In the exercise of its general appellate jurisdiction from a lower court of the United States, this court takes judicial notice of the laws of every state of the Union, because those laws are known to the court below as laws alone, needing no averment or proof."

This principle was reaffirmed in Fourth National Bank v. Francklyn, 120 U. S. 747, 751, 7 Sup. Ct. 757, 30 L. Ed. 825. In O'Dell v. Southern Ry. Co. (D. C.) 248 Fed. 345, 348, the rule was stated thus:

"Wherever a court takes cognizance of the law, it is not necessary to plead the law, or to refer to the law. It is only when a suit is brought in a court upon a cause of action arising in a foreign state that it is necessary to plead the law of the foreign state. The United States courts take judicial cognizance of the public laws of all the states in the Union. There is therefore no more necessity to plead the law of any state in the Union in a United States court than it would be in the state court to plead the law of that state."

The fourth cause of demurrer must, therefore, be overruled.

[2] The insufficiency of the second count specified by the first cause of demurrer is that the quality and description of the steel was not warranted. Inasmuch as alleged breach of warranty is the basis of the recovery sought by that count, it is manifest that, if the contract contains no warranty, the count is defective in substance. Whether the sale was made with or without warranty depends upon the language of the contract as governed by the law of the state of New York. The language of the contract is set out above. The particular statutes of that state depended upon by the plaintiff to establish that the sale was made with warranty are the following sections of the Sale of Goods Act (Laws 1909, c. 45; Consol. Laws, c. 41):

"Sec. 93. Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty."

"Sec. 95. Where there is a contract to sell or a sale of goods by description, there is an implied warranty that the goods shall correspond with the description. * * * "

"Sec. 130. In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale."

"Sec. 150. 1. Where there is a breach of warrant by the seller, the buyer may, at his election: * * *

"(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty. * * * "

In applying these statutory provisions, it must be remembered, however, that at common law the parties to a contract may by agreement limit the effect of language which would otherwise be construed as a warranty, and that personal property may be sold without warranty if the contract clearly so provides. Ann. Cas. 1912D, 1079, note; 24 R. C. L. 173. These principles are equally true and applicable under the Sale of Goods Act. Williston on Sales, § 213. In fact, section 152 of that act expressly provides:

"Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived, or varied by express agreement. * * * "

[3] As the contract in question contains the clear, express, and unequivocal provision that "the quantity, quality and description of steel is not warranted or guaranteed," it seems manifest that the first cause of demurrer must be sustained.

The demurrer does not raise the question of whether or not the plaintiff, in the absence of a warranty, is without remedy, if the steel delivered did not correspond with the specifications, and no opinion is expressed thereon.

The first cause of demurrer having been sustained, it becomes unnecessary to pass upon assignments Nos. 2 and 3.