Scates, Justice, delivered the opinion of the court: Debt on .a promissory note. The declaration contains the usual money counts and an account stated. The defendants pleaded seven special pleas. The first plea sets forth that the consideration for the note was ■ the sale of certain lots and lands in Grafton, and the delivery of a ■pretended title bond given by Sarah Mason, guardian for Martha . Maria Mason, infant heir of James Mason, deceased, by her attorney in fact, Paris Mason, the plaintiff here; which recites the sale of the lots, the execution of the note, and. is conditioned that, upon the payment of the note, Sarah Mason will execute a good and sufficient deed, with warranty,for the lots; to do which she covenants for herself and her successor, as guardian. The plea further avers that this sale, bond, and all her powers were executed, made, and derived under two special acts of the legislature of January 20, 1835, and January 16, 1886, recited and set forth in the plea; that the laws are unconstitutional and void ; and that Sarah Mason had no power to sell and convey; and therefore the consideration has wholly failed. The second plea avers that the note was given for the consideration set forth in the first plea; that Sarah Mason did not comply with the requisitions of said act, by giving [* 132] bond and obtaining the' sanction and direction of the court of probate of Madison county, in relation to said sale ; that she had no power to sell: and that the consideration has wholly failed. The third plea sets forth that the defendants failed to pay the money, as set forth in the condition of the bond ; that the contract thereby became forfeited, and according to the condition of the bond, null, void, and rescinded; that she had no power to sell nor right to convey; and therefore the consideration has failed. The fourth plea sets forth the consideration of the first, and that said sale and title bond were made by Paris Mason, as attorney in fact of Sarah Mason, guardian, neither of whom have title, etc., and that he had no power and authority in law so to act; and therefore the consideration has wholly failed. The fifth plea sets forth the same consideration as the first, and that Martha M. Mason, being an infant, had no day given in said probate court; and that said court never made an order divesting her of her estate, nor sanctioned or directed said sale; that Paris and Saraii have no title; and so the consideration has wholly failed. The sixth plea avers the same consideration, and that Paris Mason was not attorney in fact by deed; and so the consideration has failed. The seventh plea sets up a knowledge of all those defects of power, and errors in the proceedings, in Paris Mason, and a concealment of them by him, and that he had no title ; and so the consideration has failed, because there was no title to convey. Several demurrers to the first, third, fourth, fifth, and seventh pleas were sustained to the first and third, and overruled as to the others. Replication to the second plea, that after the sale and delivery of the title bond, Sarah Mason reported her actings and doings to the court of probate of Madison county, which were approved and sanctioned by said court;*by reason of which she ivas fully authorized and empowered, under said acts, to convey a good title. Demurrer to this replication sustained. Replication to the sixth plea, that Paris Mason acted as her attorney, with her knowledge and consent; and that she after-wards ratified and confirmed all his acts in the premises. Demurrer to this replication overruled. These decisions against the plaintiff, in overruling the demurrer to the fourth, fifth, and seventh pleas, and sustaining the demur'-rer to the replication to the second plea, are assigned for error. The court decided correctly in overruling the demurrer to the fourth plea. The general rule is that a trust cannot be del- [* 133] egated. Story on Agency 14, § 13 ; 1 Livermore on Agency 45-6; Paley on Agency 148 ; 4 Mass. 530 ; 2 Kent’s Com. 633 ; Principal and Agent 226. The exception to the rule, that a power coupled with an interest will authorize the delegation of the trust, by making an attorney, does not take this ease out of that rule. For although the guardian may have an interest (3 Johns. Cas. 56) in maintaining and asserting the ward’s rights, yet it is not that kind of interest which the law intends shall authorize a delegation of the agent’s power. The case in 9 Peters 627, and the act of Virginia, referred to in Principaland Agent, are special, and not referable to the general principle. The fifth plea sets forth a good defence. ■ It was not necessary that the ward should have a day in court. The proceeding was not adverse to her interest, nor against her. It is her own application, by her legally constituted guardian. She is in court by her guardian. No summons to her was necessary ; nor could she have any other day, or guardian ad litem, in court, unless upon suggestion, as amicus curia, it should appear that the guardian was about to abuse the trust, or was seeking power to injure and misapply the estate. I think it altogether an erroneous view of such cases, to regard them as proceedings against the heir, to divest her of her interest or property. It is an application by her, or on her behalf, for power and authority to do acts for her benefit and interest. The law, however jealous it may be of the conduct of guardians, or watchful of the interests of wards, would never tolerate the absurdity of appointing a guardian for infants, incapable of consenting or acting for themselves, and then treat every act of such guardian in disposing of the ward’s property, and managing the estate, as a prbceeding against the ward to deprive her of her property. If a case of abuse or mismanagement by the guardian was made to appear, a court of chancery would correct the abuse. But it does not lie in the mouth of every one who may deal with a guardian, to claim the wardship, by defending for her, as if she was sued by the guardian. They can only be permitted, as is done in the remainder of this plea, to scrutinize and question the power of the guardian to act, when their own rights depend upon the existence and due exercise of that power, within the scope of his duty and authority as guardian. This plea therefore, makes it necessary to enquire whether this sale was made according to the special acts of the legislature. The act of 1835, § 1, empowers Sarah Mason, as guardian of Martha M. Mason, to sell and convey, by sufficient deed or deeds, either at private or public sale, under the direction and sanction of the judge of probate of Madison county. Guardians have no power to fcell the real estate of their wards, unless authorized by the courts, or perhaps by the legislature. Where authority is conferred on a guardian to [* 134] sell his ward’s estate, it is a naked power, and must be strictly pursued. In this instance she was authorized to sell and convey, under the direction and sanction of-the judge of probate. These she did not think proper to obtain, or could not; but proceeded to sell without them, literally departing from the terms of the power. The legislature did not think proper, in this instance, to trust to her discretion ; yet she disregarded the terms upon which she was authorized to sell. Under such powers, where two are authorized to sell, one cannot sell alone ; if one is authorized’to sell, with the approbation and under the direction of another, that other must first approve and direct. The plea, therefore, is good, and a sufficient bar to this action. But as the parties have agreed, that if either desire it, the cause shall be remanded with leave to plead de novo, it may be necessary to notice a further objection. It is said that these acts of the legislature are unconstitutional, because it is an exercise of a judicial power. The convention in dividing thepowers of the government could not have used a more comprehensive, and at the same time, more definite designation of power, than they did in the phrase “judicial powers.” Yet, it is to be regretted, that the character of the act, whether legislative, executive, or judicial, is so indefinite or mixed as not to be referable to the one class or the other of these powers, with clearness and distinctness. In the case of Lane et al. v. Dorman et ux. 3 Scam. 238, this court commenced its examination of this class ol powers ; and there held a certain act unconstitutional, because the matter determined was of a judicial nature. The acts reviewedin Edwards v. Pope et al. 3 Scam. 465 were sustained. Here is a case differing from each, and yet referable to the same class of powers. We have interpreted these acts as conferring this power, when directed and sanctioned by the probate court ; and have decided that it could not be exercised until that direction and sanction were first obtained. Here, then, the legislature have conferred power and jurisdiction upon that court; an equitable power to supervise, protect and aid the ward, through her guardian, as a court of chancery. To deny this power to the legislature, in this view of its action, would almost annihilate its powers. A different rule obtains in interpreting the powers in the constitutions of the United States and the states. In ascertaining the powers of the former, we examine to see what powers are expressly granted, or are necessarily implied for their exercise. In the latter we only examine to see what are denied by the federal and state constitutions. And my view of the law-making power of these state governments is, that they can do any legislative act not prohibited by the constitutions; and without and beyond these lim- [* 135] itations and restrictions they are as absolute, omnipotent, and uncontrollable as parliament. The seventh plea relies upon a suppressio veri as a defence. The basis of this defence is fraud; and while the plea attributes a knowledge of a want of power to the plaintiff, and a concealment of it; yet it does not appear that the. plaintiff pretended to sell in any other right than as guardian, nor that she pretended to have any other title than that of the ward. There are-no false representations alleged. Sug. on Vend. 249, note 136; Breese 34. The power and appointment of a guardian are matters of law, and of record, which those dealing with them should and may enquire into, and, I think, are bound to notice, to the extent to which the ■doctrine of caveat emptor should apply with us. The appointment is recorded in the probate court; the powers are such as the law confers. This much the defendants should examine. If she pretends to go beyond these, they should call for her authority. If they deal without it, I think they ought to be concluded by their own negligence. These remarks I confine to the character in which the party acts, and the powers she assumes to exercise, and in relation to a suppressio veri. If there was a suggestio falsi, or fraudulent representations, the question would be different. This plea is therefore bad. The demurrer to the replication to the second plea is already determined by the demurrer to the fifth plea. A want of title in the vendor may be set up under our statute, as a want or failure of the consideration of the note sued on. Gale’s Stat. 526, § 5; R. L. 483. We do not regard the title bond in this case, or the covenant for title, as the consideration; the true consideration is the estate. 14 Pick. 217, 296; 22 Pick. 166; Owings v. Thompson et al. 3 Scam. 502; 1 Pick. 455. The judgment is affirmed with costs, and the cause remanded for further proceedings. Judgment affirmed.